IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA

       Plaintiff,

Vs.            No. 05-40096-01-SAC

DILBERTO EDUARDO ARCE,

       Defendant.

MEMORANDUM AND ORDER

This case comes before the court on defendant's objection to the government's notice of intent to admit evidence pursuant to Rule 404(b). Because defendant asks the court to prevent the admission of certain evidence at trial, the court considers this objection to be in the nature of a motion in limine.

Defendant is charged with one count of conspiracy to distribute methamphetamine from approximately January of 2003 to August of 2004, and one count of possession of methamphetamine with intent to distribute in on or about August of 2004. Defendant's theory of defense is a general

1

denial.

**Background**

The court is unaware of many facts regarding this case, but understands that on August 2, 2004, law enforcement officers saw defendant's wife, Susana Avila-Agramon, attempt to retrieve and start a car in which 3.3 kilograms of methamphetamine had been found. She did so in response to a telephone call to a drug supplier, which unbeknownst to her, was as part of a sting operation. Soon after that event, and based upon it, she and two others were indicted and swiftly arrested, and then entered into agreements by which they pled guilty to conspiracy to distribute methamphetamine. Those three are currently in custody and intend to testify in this case that the drugs found in the car, which defendant's wife attempted to drive, were part of a load being transported at defendant's direction, and that defendant was the boss of a large drug conspiracy.

The facts, as stated in the plea agreement of Ms. Avila-Agramon, who was defendant's wife at the time, follow.

> Late in the morning of August 1, 2004, a Geary County Sheriff's Deputy stopped a red Dodge Neon for driving erratically. The vehicle was occupied by two Hispanic males, later identified as the co-defendants in this case. The driver was co-defendant Omar Aguiluz-Nunez, and the passenger was co-defendant Jose Renteria-Higuera. The deputy ultimately asked for and received permission to search

> the vehicle. The search revealed approximately 3.3 kilograms of methamphetamine mixture ... hidden beneath the spare tire in the trunk of the car.
>
> After the co-defendants were arrested, DEA agents arrived and interviewed them. Co-defendant [Renteria] ultimately admitted to all of the details of the trip, including the location where the drugs were loaded into the vehicle, the amount he was to have been paid for his participation, and the identity of the individual for whom he and Aguiluz were hauling the load.
>
> Based on the information provided by Renteria, the agents decided to attempt a controlled delivery of the drugs. The agents had Renteria place a recorded telephone call to the supplier, whom Renteria identified as Francisco Avila. Renteria told Avila that the Neon had broken down and that Renteria and Aguiluz had left it in the parking lot of the Walmart in Junction City, Kansas. Avila indicated he would send someone to retrieve the vehicle (at this point the agents and deputies manufactured four "sham" bundles with which to replace the bundles of methamphetamine which had originally been hidden in the trunk).
>
> The following afternoon, surveillance agents saw a maroon Ford Crown Victoria, bearing Colorado tags, enter the Walmart lot and park five spaces from the Neon. As agents watched, a female left the Crown Victoria, got into the Neon, and attempted to start the Neon (which had been disabled by the agents). When the Neon wouldn't start, a male - who had arrived in the Crown Victoria along with the female - began working under the hood. As the male worked under the hood, the female opened the trunk and began searching inside. After several unsuccessful attempts to get the Neon running, the pair abandoned their attempts and began to leave the area. At this point they were arrested. The female was identified as [Susana Avila-Agramon]. Renteria later identified [her] as the wife of the individual for whom he was transporting the drugs.

*US v. Avila-Agramon et al*, No. 04-40108, Dk. 113, p. 2-3.

After Ms. Avila-Agramon's plea, but before her sentencing, the present indictment issued for this defendant (Sept. 7, 2005), based upon the same

3

events in 2003 and 2004 which gave rise to Ms. Avila-Agramon's and her two co-defendants' convictions. Defendant was not arrested until November 2, 2006, apparently because he could not be found.

**Current motion**

The government recently put defendant on notice of its intent to seek admission at trial of facts surrounding defendant's arrest in November of 2006. The government states that at the time of defendant's arrest, a search of his home at 8635 West Devonshire, Phoenix, Arizona revealed an active methamphetamine lab, five pounds of methamphetamine, marijuana, cocaine, MSM and a stolen .45 caliber handgun. Defendant's then "significant other" and a child were in the residence at the time. The government contends that admission of the above 2006 events will demonstrate defendant's motive, opportunity, intent, knowledge, and absence of mistake or accident regarding his 2003 and 2004 charges, so is admissible pursuant to 404(b).

Regarding his arrest, defendant states the United States Marshal's Service set up surveillance at an elementary school in Phoenix, Arizona, because they had received information that defendant's daughter was enrolled there. At approximately 2:00 p.m. on November 2, 2006,

Marshals saw defendant pick up his daughter at school, then followed defendant to a residence in Phoenix, which defendant and his daughter entered.  When defendant left that residence at approximately 4:30 p.m. and got into a vehicle parked nearby, he was arrested.  The Marshals then did a security sweep of the residence and found therein the items stated by the government.

Defendant contends that the evidence relating to his arrest and to the items found in the house at the time of arrest have no probative value, are prejudicial, and if admitted would confuse the jury, waste time, and constitute a mini-trial.  Defendant's objections are founded on his allegation that the residence at which he was arrested in 2006 and in which the drugs and related items were found was not his.  He states that he just "happened to drop off his daughter" there, that "there is no evidence this was [his] residence,"and that "the residence at which [he] was arrested was not his residence." Dk. 33, p. 5-6.

**General law 404(b)**

Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of ... intent, ... plan, knowledge, ... or

absence of mistake.

Four factors are to be considered in weighing the admissibility of evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose, (2) whether the evidence is relevant, (3) whether the probative value of the evidence outweighs any prejudicial effect, and (4) whether a limiting instruction is given. *See Huddleston v. United States*, 485 U.S. 681, 691(1988); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

The Tenth Circuit recently explained these four factors as follows:

> Evidence is admitted for a proper purpose if allowed for one or more of the enumerated purposes in Rule 404(b). It is relevant if it tends to prove or disprove one of the elements necessary to the charged offense. See Fed. R. Evid. 401. The danger of unfair prejudice resulting from the evidence's admission must not substantially outweigh the probative value of the evidence under the balancing test of Fed. R. Evid. 403. *See United States v. Tan*, 254 F.3d 1204, 1211-12 (10th Cir. 2001) (in order for evidence to be inadmissible under Rule 403 the evidence's unfair prejudice must do more than "damage the [d]efendant's position at trial," it must "make [ ] a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged"). The limiting instruction must caution the jury to consider the evidence only for the limited purposes for which it is admitted and not as probative of bad character or propensity to commit the charged crime.

*United States v. Mares*, 441 F.3d 1152, 1156 -1157 (10th Cir. 2006).

**Subsequent acts**

Here, the government seeks to admit evidence of events occurring two years after the charged offenses. The fact that the government seeks to admit evidence of events occurring over two years after the charged conduct is not determinative.

> It is settled in the Tenth Circuit that evidence of "other crimes, wrongs, or acts" may arise from conduct that occurs after the charged offense.  Our cases have held that "[r]egardless of whether 404(b) evidence is of a prior or subsequent act, its admissibility involves a case-specific inquiry that is within the district court's broad discretion." *United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir.1996).  Where the uncharged acts show motive, intent, or knowledge, they are admissible "whether the acts involved previous conduct or conduct subsequent to the charged offense, as long as the uncharged acts are similar to the charged crime and sufficiently close in time." *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

*Mares*, 441 F.3d at 1157.

The Tenth Circuit has "routinely upheld the admissibility of subsequent acts evidence in other cases." *Mares*, 441 F.3d at 1157, citing *U.S. v. Kelley*,187 Fed. Appx. 876, 887 (10th Cir. 2006) (finding evidence admissible to show intent and motive one year after the charged conspiracy where both offenses involved methamphetamine); *United States v. Abreu*, 962 F.2d 1425 (10th Cir.1992) (evidence of defendant's

subsequent possession of cocaine relevant to prove intent in drug trafficking case).

Subsequent acts evidence must be similar, although not identical to the charged offense, to be admissible.

> Although generally admissible, subsequent conduct, just as prior conduct, must share similarity with the charged crime. *Zamora*, 222 F.3d at 762. It need not be identical. *Gutierrez*, 696 F.2d at 755. Similarity may be demonstrated through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.' " *Zamora*, 222 F.3d at 762 (quoting *United States v. Queen*, 132 F.3d 991, 996 (4th Cir.1997)).

*Mares*, 441 F.3d 1157.

The Tenth Circuit has identified certain factors which the court must examine in determining whether the subsequent and charged offenses are sufficiently similar.

> We have identified a number of non-exclusive factors in assessing similarity: (1) whether the acts occurred closely in time. *See Olivo*, 80 F.3d at 1468; *see also United States v. Bonnett*, 877 F.2d 1450, 1461 (10th Cir. 1989) (reviewing the admission of subsequent bad acts under Rule 404(b) and explaining that "[t]he closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion"); (2) geographical proximity, *see Zamora*, 222 F.3d at 762-63 (evidence of robbery of restaurant in same town as charged attempted bank robbery); (3) whether the charged offense and the other acts share similar physical elements, *see id.; see also Gutierrez*, 696 F.2d at 755 (subsequent robbery similar to charged robbery in that defendant in both instances drove getaway car and

used her children as "cover"); and (4) whether the charged offense and the other acts are part of a common scheme, *see United States v. Becker*, 230 F.3d 1224, 1232-33 (10th Cir. 2000) (drug defendant's prior convictions for methamphetamine possession and distribution not admissible under Rule 404(b) in part because the prior acts lacked a common scheme with the charged offense of methamphetamine production ).

*Mares*, 441 F.3d at 1157 -1158.  These shall be addressed below.

### Temporal proximity

The Tenth Circuit cases demonstrate that its approach is not to establish a bright-line rule regarding the outside length of time which may be considered "sufficiently close in time." *Zamora*, 222 F.3d at 762. "There is no absolute rule regarding the time that can separate a prior act from the charged offense." *United States v. Olivo*, 80 F.3d 1466, 1468 (10th Cir. 1996) (citing *United States v. Cuch*, 842 F.2d 1173, 1178 (10th Cir.1988)). The necessary closeness in time is a matter committed to the trial court's discretion and is resolved by a case-specific inquiry. *Id.* at 1469.  The Tenth Circuit has affirmed the admissibility of prior bad acts occurring more than a decade prior to the offense in question. *United States v. Wacker*, 72 F.3d 1453, 1468 -1469 (10th Cir.1995).

The Tenth Circuit has recently shown its unwillingness to establish an inflexible rule for remoteness in the context of Rule 404(b). It

has held that evidence of defendant's prior convictions for manufacturing or attempting to manufacture methamphetamine was admissible to show defendant's knowledge of the methamphetamine manufacturing process and its dangerousness in a prosecution on charges of attempting to distribute methamphetamine and second degree murder, even though the convictions occurred approximately seven years earlier. *United States v. Ward*,182 Fed. Appx. 779, 2006 WL 1462166 (10th Cir. 2006).  Similarly, in *United States v. Edwards*, 69 F.3d 419 (10th Cir.1995), the Tenth Circuit held that the trial court did not abuse its discretion by admitting prior bad acts evidence of defendants accused of participation in a drug distribution conspiracy, consisting of their testimony in an unrelated earlier trial in which they were government witnesses, admitting they had participated in drug distribution scheme five or six years before, even though defendants claimed that passage of time precluded evidence from being relevant as to motive, knowledge, opportunity, or absence of mistake or accident in present case.  However, in *United States v. Becker*, 230 F.3d 1224 (10th Cir. 2000), the Tenth Circuit found prior felony convictions for conspiracy to possess methamphetamine and failure to pay drug tax, and prior search of defendant's residence which produced methamphetamine trafficking

paraphernalia, were insufficiently relevant to prosecution for manufacture of methamphetamine where convictions preceded manufacturing prosecution by six years and search preceded prosecution by four years, and similarity of offenses was limited. There, the court noted that "[f]our to six years transcends our conception of 'close in time' as established in *Wilson*, 107 F.3d at 785." *Becker*, 230 F.3d at 1232 (other citations omitted).

Based upon Tenth Circuit precedent, the passage of two years and four months between the charged offenses and defendant's arrest is not an inherently unacceptable length of time.

**Geographic proximity**

The court lacks sufficient facts to determine whether this factor cuts infavor of or against admission of the evidence. It appears that Ms. Avila-Agramon and her co-defendants came from somewhere other than Kansas, but other than the fact that the car in which she arrived bore Colorado plates, no geographic identifiers are present. Evidence may or may not show that Ms. Avila-Agramon lived with defendant in Phoenix, Arizona in 2004, or that Phoenix was the location where the drugs were loaded into the vehicle in 2004, or that the individual for whom Renteria and Aguiluz were hauling the load was based out of Phoenix. Given the

fact that drug trafficking occurs over a large geographical region, a lack of geographic proximity does not weigh heavily in this case.

### Similarity of physical elements

The government contends that the similarity of physical elements is shown by defendant's willingness to send his wife to retrieve a car containing methamphetamine in 2004 and by his willingness to subject his "significant other" and his child to a methamphetamine lab in their home in 2006. In the event the government shows that defendant occupied or resided at 8635 West Devonshire, Phoenix, Arizona, some similarity is shown. *See United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982) (subsequent robbery similar to charged robbery in that defendant in both instances drove getaway car and used her children as "cover").

### Commonality of scheme

The scheme which defendant is charged with is conspiring to distribute methamphetamine in 2003 and 2004, and possessing methamphetamine with intent to distribute it in August of 2004. The subsequent event is his arrest on those charges, including the discovery of five pounds of methamphetamine and a methamphetamine lab in the residence. This tends to show that defendant continued to engage in

methamphetamine operations, as his ability to manufacture methamphetamine would provide him with the source of methamphetamine necessary to distribute it or possess it in distribution amounts. In the event the government shows that defendant occupied or resided at 8635 West Devonshire, Phoenix, Arizona, sufficient commonality of scheme will be shown. *See United States v. Wint*, 974 F.2d 961, 967 (8th Cir.1992) (evidence of prior arrest for possession of crack cocaine was sufficiently similar to be admissible in a case where the defendant was charged with conspiracy to distribute cocaine because "both involved distributable amounts of cocaine").

The above analysis demonstrates sufficient relevance. The evidence has been offered for a proper purpose of proving intent, plan,motive, knowledge and absence of mistake. "Subsequent acts evidence is particularly relevant when a defendant's intent is at issue." *Mares*, 441 F.3d at 1157. *See e.g., Olivo*, 80 F.3d at 1468 (holding evidence of a subsequent act occurring over one year after the charged offense was properly admitted under Rule 404(b) to show intent and planning.) The court finds that the evidence would not have more prejudicial impact than probative force.

By standing on his not guilty plea and proceeding to trial on a general denial, a defendant puts in issue "every material ingredient of the crime charged," leaving the government its full burden of proving every element beyond a reasonable doubt. *United States v. Hill*, 60 F.3d 672, 676 (10th Cir.1995). This burden may be met in part by the admission of the evidence proffered by the government.

IT IS THEREFORE ORDERED that defendant's objection to the government's Rule 404(b) evidence (Dk. 33) is construed as a motion in limine and is denied.

Dated this 26th day of June, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge